## PART 1 - Appellant and Agency Information
### Everyone must complete Part 1.

**RECEIVED MAY 3 - 2016 — MERIT SYSTEMS PROTECTION BOARD, CENTRAL REGION, CHICAGO, ILLINOIS**

*Please type or print legibly.*

**1. Name** *(last, first, middle)*
- Last: Mroz
- First: John
- M. Initial: J

Please list your first name as it appears in your official personnel records. For example, if your first name is "William" on your official personnel records, please list it that way on the appeal form, not "Bill" or "Willy."

**2. Present address** *(number and street, city, State, and Zip code)*
You must promptly notify the Board in writing of any change in your mailing address while your appeal is pending.
- Address: [redacted]
- City: Ft. Knox
- State: KY
- Zip Code: 40121

**3. Telephone Numbers** *(include area code) and E-Mail Address*
You must promptly notify the Board in writing of any change in your telephone number(s) or e-mail address while your appeal is pending.
- Home:
- Work:
- Fax:
- Cell: [redacted]
- e-Mail Address: johnj_49@yahoo.com

**4. Name and address of the agency that took the action or made the decision you are appealing** *(include bureau or division, street address, city, State and Zip code)*
- Agency Name: AMC/ASC/407th AFSBN/LRC Ft. Knox and JAG Attorney Mr. Parrish
- Bureau: AMC/ASC/407th AFSBN/LRC Ft. Knox and JAG Attorney Mr. Parrish
- Address: 4400 Martin Rd
- City: Redstone Arsenal
- State: Alabama
- Zip Code: 35898
- Phone Number: 256-450-7978/7910

**5. Your Federal employment status at the time of the action or decision you are appealing:**
- [X] Permanent
- [ ] Temporary
- [ ] Term
- [ ] Seasonal
- [ ] Applicant
- [ ] Retired
- [ ] None

**6. Type of appointment (if applicable):**
- [X] Competitive
- [ ] Excepted
- [ ] Postal Service
- [ ] SES
- [ ] Other (describe):

**7. Your position, title, grade, and duty station at the time of the action or decision you are appealing (if applicable):**
- Occupational Series or Cluster: 2001
- Position Title: Supv General Supply Specialist
- Grade or Pay Band: GS-12
- Duty Station: Ft. Knox, KY

**8. Are you entitled to veteran's preference?** See 5 U.S.C. § 2108.
- [X] Yes
- [ ] No

**9. Length of Federal service (if applicable):**
47 Years  3 Months

**10. Were you serving a probationary, trial, or initial service period at the time of the action or decision you are appealing?**
- [ ] Yes
- [X] No

**11. HEARING:** You may have a right to a hearing before an administrative judge. If you elect not to have a hearing, the administrative judge will make a decision on the basis of the submissions of the parties. Do you want a hearing?
- [X] Yes
- [ ] No

OMB No. 3124-0009

# MERIT SYSTEMS PROTECTION BOARD
# APPEAL FORM (MSPB FORM 185)

## INSTRUCTIONS FOR COMPLETING YOUR APPEAL

### MSPB's Authority to Review Employment Related Actions or Decisions

The MSPB (the Board)'s legal authority (jurisdiction) to review employment-related actions or decisions is limited to those matters specifically entrusted to it by law, rule, or regulation. A listing of matters over which the Board has jurisdiction can be found in the Board's regulations at 5 C.F.R. § 1201.3. The administrative judge assigned to your case will determine whether the Board has jurisdiction over the particular circumstances of your appeal.

### Where to Obtain Additional Information

Much more information about the adjudication of appeals before the MSPB, including the Board's regulations, may be found at the Board's website: www.mspb.gov. The Board's regulations are also published in the Code of Federal Regulations, 5 C.F.R. Part 1200 et seq., available in many libraries.

### Time Limits for Filing an Appeal

You must file your appeal within **30 calendar days** of the effective date, if any, of the action or decision you are appealing, or the date you received the agency's decision, whichever is later. (Please note that Individual Right of Action (IRA), Uniformed Services Employment and Reemployment Rights (USERRA), and Veterans Employment Opportunities Act (VEOA) appeals have different time limits, as described in **Appendix A**). In limited circumstances, the 30-day filing time limit may be extended if you and the agency mutually agree in writing to try to resolve your dispute through an alternative dispute resolution process before you file an appeal. See 5 C.F.R. § 1201.22(b)-(c). The 30-day time limit may also be extended if you have previously filed a formal equal employment opportunity (EEO) complaint regarding the same matter, as described in **Appendix A**. The date of filing is the date your appeal is postmarked, the date of the facsimile (fax) transmission, the date it is delivered to a commercial overnight delivery service, the date of receipt in the regional or field office if you personally deliver it, or the date of submission if you file your appeal electronically. **Do not delay filing your appeal merely because you do not currently have the documents requested in this form.**

### Where to File an Appeal

You must file your appeal of the agency's action or decision with the Board's regional or field office responsible for your actual or potential duty station. If you are appealing a retirement or suitability decision by the Office of Personnel Management (OPM), you must file your appeal with the Board's regional or field office responsible for where you live. See 5 C.F.R. § 1201.4(d) and 1201.22(a). For a list of regional and field offices, see **Appendix B**.

### Attachments

**Please submit only the attachments requested in this form.** The filing of an appeal is just the beginning of the adjudication process, and you will have additional opportunities to submit evidence and argument before a decision is issued. Further, the agency will submit all the documents contained in its record of the action. 5 C.F.R. § 1201.25(c).

## If you prefer to file your appeal electronically, please visit MSPB e-Appeal Online — https://e-appeal.mspb.gov

MSPB Form 185, Page 1 (5/13)
5 C.F.R. Parts 1201, 1208 and 1209

| PART 2 - Agency Personnel Action or Decision (non-retirement) |
|---|
| Complete this part if you are appealing a Federal agency personnel action or decision other than a decision directly addressing your retirement rights or benefits. This includes certain actions that might not otherwise be appealable to the Board: individual right of action (IRA) appeals under the Whistleblower Protection Act (WPA); appeals under the Uniformed Services Employment and Reemployment Rights Act (USERRA); or appeals under the Veterans Employment Opportunities Act (VEOA). An explanation of these three types of appeals is provided in **Appendix A**. |

12. Check the box that best describes the agency **personnel action or decision** you are appealing. (If you are appealing more than one action or decision, check each box that applies.)

- ☐ Removal (termination after completion of probationary or initial service period)
- ☐ Termination during probationary or initial service period
- ☐ Reduction in grade, pay, or band
- ☐ Suspension for more than 14 days
- ☐ Failure to restore/reemploy/reinstate or improper restoration/reemployment/reinstatement
- ☐ Negative suitability determination
- ☐ Involuntary resignation
- ☒ Involuntary retirement
- ☐ Denial of within-grade increase
- ☐ Furlough of 30 days or less
- ☐ Separation, demotion or furlough for more than 30 days by reduction in force (RIF)
- ☒ Other action (describe): Forced retirement, retaliatory actions, and undue influence by agency representative, failure to address issues appealed from through claimants attorney.

13. Date you received the agency's final decision letter (if any) (MM/DD/YYYY): 12/09/2015

14. Effective date (if any) of the agency action or decision (MM/DD/YYYY): 04/01/2016

15. Prior to filing this appeal, did you and the agency mutually agree in writing to try to resolve the matter through an alternative dispute resolution (ADR) process?

☒ Yes *(attach a copy of the agreement)*   ☐ No

16. Explain briefly why you think the agency was wrong in taking this action, including whether you believe the agency engaged in harmful procedural error, committed a prohibited personnel practice, or engaged in one of the other claims listed in **Appendix A**. **Attach the agency's proposal letter, decision letter, and SF-50, if available.** Attach additional sheets if necessary (bearing in mind that there will be later opportunities to supplement your filings).

See attachments for explanations.

| PART 2 - Agency Personnel Action or Decision (non-retirement) (continued) |
|---|

17. With respect to the agency personnel action or decision you are appealing, have you, or has anyone on your behalf, filed a grievance under a negotiated grievance procedure provided by a collective bargaining agreement?

☐ Yes   ☒ No

If "Yes," attach a copy of the grievance, enter the date it was filed, and enter the place where it was filed if different from your answer to question 4 in Part 1.

Agency Name: 

Date Filed (MM/DD/YYYY): 

Bureau: 

Address: 

City:     State:     Zip Code: 

If a decision on the grievance has been issued, attach a copy of the decision and enter the date it was issued (MM/DD/YYYY):

Date Issued (MM/DD/YYYY): 

**Answer Question 18 ONLY if you are filing an IRA appeal.**

18. If you filed a whistleblowing complaint with the Office of Special Counsel (OSC), provide the date on which you did so and the date on which OSC made a decision or terminated its investigation, if applicable. Attach copies of your complaint and OSC's termination of investigation letter, notifying you of your right to seek corrective action from the Board.

Date Filed (MM/DD/YYYY): 

Date of OSC decision or termination of investigation (MM/DD/YYYY): 

**Answer Question 19 ONLY if you are filing a USERRA or VEOA appeal.**

19. If you filed a complaint with the Department of Labor (DOL), list the date on which you did so, and attach a copy of your complaint. If DOL has made a decision on your complaint, list the date of this decision, and attach a copy of it. If DOL has not made a decision on your complaint within 60 days from the date you filed it, state whether you have notified DOL of your intent to file an appeal with the Board, and attach a copy of such notification.

Date Filed (MM/DD/YYYY): 

Has DOL made a decision on your complaint?

☐ Yes   ☒ No

If "Yes," enter the date it was made. If "No", state whether you have notified DOL of your intent to file an appeal with the Board, and attach a copy of such notification.

Date of DOL decision (MM/DD/YYYY):     ☐ Notified DOL of your intent to file an appeal with the Board?

# PART 3 - OPM or Agency Retirement Decision

**Complete this part if you are appealing a decision of the Office of Personnel Management (OPM) or other Federal agency directly addressing your retirement rights or benefits.**

**20. In which retirement system are you enrolled?**

☐ CSRS   ☐ CSRS Offset   ☒ FERS

☐ Other, *describe:*

**21. Are you a:**

☐ Current Employee   ☒ Annuitant

☐ Surviving Spouse

☐ Other, *describe:*

**22. If retired, date of retirement, or if unknown, approximate date:**

Date Retired (MM/DD/YYYY): 03/31/2016

**23. Describe the retirement decision you are appealing.**

Forced retirement, coercion, undue influence, reprisal. The forced retirement from Federal Service that of was requested to take effect April 1, 2015.

**24. Have you received a final or reconsideration decision from OPM or another Federal agency?**

☐ Yes *(attach a copy)*   ☒ No

If "Yes," on what date did you receive the decision?

Date Received (MM/DD/YYYY):

Provide the OPM processing (CSA or CSF) number in your appeal:

OPM Claim Number:

**25. Explain briefly why you think OPM or another Federal agency was wrong in making this decision.**

See attachments for explanation.

## PART 4 — Designation of Representative

26. Has an individual or organization agreed to represent you in this proceeding before the Board? (You may designate a representative at any time. However, it is unlikely that the appeals process will be delayed for reasons related to obtaining or maintaining representation. Moreover, you must promptly notify the Board in writing of any change in representation.)

☒ **Yes** *(Complete the information below and sign)*   ☐ **No**

**DESIGNATION:**

"I hereby designate [Wesley Durham, ESQ] to serve as my representative during the course of this appeal. I understand that my representative is authorized to act on my behalf. In addition, I specifically delegate to my representative the authority to settle this appeal on my behalf. I understand that any limitation on this settlement authority must be filed in writing with the Board."

Representative's address *(number and street, city, State and Zip code)*
Address: 400 W. Lincoln Trail
City: Radcliff
State: Kentucky   Zip Code: 40160

Representative's telephone numbers *(include area code)* and e-mail address
Office: 270-351-4383
Fax: 270-351-4426   Other:
e-Mail Address: wesleylovesjesus@gmail.com

### SIGN BELOW TO MAKE YOUR DESIGNATION OF REPRESENTATIVE EFFECTIVE

*John Mroz*
Appellant's Signature

4/22/2016
Date *(MM/DD/YYYY)*

## PART 5 - Certification

27. I certify that all of the statements made in this form and any attachments are true, complete, and correct to the best of my knowledge and belief.

_____
Signature of Appellant or Representative

04/25/2016
Date (MM/DD/YYYY)

## Privacy Act Statement

*This form requests personal information that is relevant and necessary to reach a decision in your appeal. The Merit Systems Protection Board collects this information in order to process appeals under its statutory and regulatory authority. Because your appeal is a voluntary action, you are not required to provide any personal information to the Merit Systems Protection Board in connection with your appeal. Conceivably, failure to provide all information essential to reaching a decision in your case could result in the dismissal or denial of your appeal.*

*Decisions of the Merit Systems Protection Board are available to the public under the provisions of the Freedom of Information Act and are posted to the Merit Systems Protection Board's public website. Some information about the appeal also is used in depersonalized form for statistical purposes. Finally, information from your appeal file may be disclosed as required by law under the provisions of the Freedom of Information Act and the Privacy Act. See 5 U.S.C. §§ 552, 552a.*

## Public Reporting Burden

*The public reporting burden for this collection of information is estimated to vary from 20 minutes to 4 hours, with an average of 60 minutes per response, including time for reviewing the form, searching existing data sources, gathering the data necessary, and completing and reviewing the collection of information. Send comments regarding the burden estimate or any other aspect of the collection of information, including suggestions for reducing this burden, to Office of the Clerk of the Board, Merit Systems Protection Board, 1615 M Street, N.W., Washington, DC 20419 or by e-mail to mspb@mspb.gov.*

# APPENDIX A

## ADDITIONAL CLAIMS

**Harmful Procedural Error:** Error by the agency in the application of its procedures that is likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error. The burden is upon the appellant to show that the error was harmful, i.e., that it caused substantial harm or prejudice to his or her rights. 5 C.F.R. § 1201.56(c)(3).

**Prohibited Personnel Practices:** A claim that the agency action or decision you are challenging was the result of one of the personnel practices prohibited by 5 U.S.C. § 2302(b). Among the prohibited personnel practices most likely to be relevant as an affirmative defense in an MSPB proceeding are: unlawful discrimination under subsection (b)(1); retaliation for protected whistleblowing under subsection (b)(8); and retaliation for other protected activity under subsection (b)(9).

- **Unlawful Discrimination:** A claim that the agency action was the result of prohibited discrimination based on race, color, religion, sex, national origin, disability, age, marital status, political affiliation, genetic information, and retaliation for prior EEO activity. See 5 U.S.C § 2302(b)(1) and 7702; 5 C.F.R. Part 1201, Subpart E; 29 C.F.R. Part 1630 and Appendix to Part 1630; 42 U.S.C. § 2000ff et seq.; 29 C.F.R. § 1614.302-.308. If you filed a formal discrimination complaint, give the date on which you did so, state whether and when the agency issued a final decision on your discrimination complaint, and provide copies of both.

- **Retaliation for whistleblowing activity under 5 U.S.C. § 2302(b)(8) and (b)(9)(A)(i), (B), (C), or (D):** A claim that the agency action was taken in retaliation for the disclosure of information the individual reasonably believes demonstrates a violation of law, rule, or regulation, gross mismanagement, gross waste of funds, abuse of authority, or substantial and specific danger to public health or safety, or in retaliation for exercise of the right to appeal, complain, or grieve an alleged violation of Subsection (b)(8); for testifying or otherwise lawfully assisting another's right to appeal, complain, or grieve such an alleged violation; for cooperating with or disclosing information to the Inspector General or Special Counsel in accordance with applicable provisions of law; or for refusing to obey an order that would require a violation of law. See 5 C.F.R. § 1209.4(b).

- **Retaliation for other protected activity under 5 U.S.C. § 2302(b)(9)(A)(ii):** A claim that the agency action was taken in retaliation for the exercise of a right, other than with regard to remedying an alleged violation of 5 U.S.C. § 2302(b)(8), such as the filing of an appeal, complaint, or grievance.

**Violation of Rights under the Uniformed Services Employment and Reemployment Rights Act (USERRA):** A claim that the agency action violated rights and benefits under 38 U.S.C. Chapter 43, by denying initial employment, reemployment, retention in employment, promotion, or any benefit of employment on the basis of membership, application for membership, performance of service, application for service, or obligation to perform service in a uniformed service. See 5 C.F.R. § 1208, Subpart B.

**Violation of a Law or Regulation relating to Veterans' Preference pursuant to the Veterans Employment Opportunities Act (VEOA):** A claim that the agency action violated rights related to veterans' preference under any statute or regulation. See 5 C.F.R. § 1208, Subpart C; 5 U.S.C. § 3330(a).

**Not in accordance with law:** A claim that the agency's action was unlawful in its entirety, that is, there is no legal authority for the action.

## IRA, USERRA, and VEOA APPEALS

The law provides for three types of appeals in certain situations that might not otherwise be appealable to the MSPB (See 5 C.F.R. § 1201.3(a) for a list of otherwise appealable actions): Individual Right of Action (IRA) appeals under the Whistleblower Protection Act (WPA) and Whistleblower Protection Enhancement Act (WPEA) pursuant to 5 U.S.C. § 1221; appeals under the Uniformed Services Employment and Reemployment Rights Act (USERRA) pursuant to 38 U.S.C. § 4324; and appeals under the Veterans Employment Opportunities Act (VEOA) pursuant to 5 U.S.C. § 3330a.

**Note:** As previously set forth, allegations of retaliation for whistleblowing, as well as allegations under USERRA and VEOA, may be brought as additional claims in cases that are otherwise appealable to the Board.

**IRA Appeals under the WPA and WPEA.** Subsection (b)(8) of 5 U.S.C. § 2302 makes it a prohibited personnel practice to threaten, propose, take, or not take a personnel action listed in 5 U.S.C. § 2302(a)(2) because of an individual's disclosure of information that he or she reasonably believes shows a violation of law, rule, or regulation, gross mismanagement, gross waste of funds, abuse of authority, or substantial and specific danger to public health or safety. Subsections (b)(9)(A)(I), (B), (C), and (D) make it a prohibited personnel practice to threaten, propose, take, or not take a personnel action because an individual exercised the right to appeal, complain, or grieve an alleged violation of Subsection (b)(8); testified or otherwise lawfully assisted another's right to appeal, complain, or grieve such an alleged violation; cooperated with or disclosed information to the Inspector General or Special Counsel in accordance with applicable provisions of law; or refused to obey an order that would require a violation of law. See 5 C.F.R. § 1209.4. If the personnel action allegedly taken in reprisal for making a protected disclosure or engaging in protected activity is not otherwise appealable to the Board, you must first file a whistleblower complaint with the Office of Special Counsel (OSC) and exhaust the procedures of that office, see 5 U.S.C. § 1214(a)(3), before you may file an IRA appeal with the Board under 5 U.S.C. § 1221.

**USERRA Appeals.** In USERRA appeals, appellants allege that agencies have violated their rights and benefits under 38 U.S.C. Chapter 43, by denying initial employment, reemployment, retention in employment, promotion, or any benefit of employment on the basis of their membership, application for membership, performance of service, application for service, or obligation to perform service in a uniformed service. See 5 C.F.R. § 1208, Subpart B. To pursue redress for a USERRA violation, you may either file a USERRA complaint with the Department of Labor (DOL) or file an appeal with the Board. However, if you first file a USERRA complaint with DOL, you must exhaust DOL procedures before you may file an appeal with the Board. See 5 C.F.R. § 1208.11.

**VEOA Appeals.** A VEOA appeal is one in which a preference eligible (defined in 5 U.S.C. § 2108) or veteran described in 5 U.S.C. § 3304(f)(1) alleges that a Federal agency violated his or her rights under any statute or regulation relating to veterans' preference. See 5 C.F.R § 1208, Subpart C. Unless you are making a VEOA claim in an otherwise appealable action, you must file a VEOA complaint with DOL and allow DOL at least 60 days to try to resolve the matter before filing an appeal with the Board.

## Time Limits for filing IRA, USERRA, and VEOA Appeals, and following the filing of a Formal EEO Complaint

**IRA Appeals.** If you are filing an IRA appeal, you must file no later than **65 days** after the date of the Office of Special Counsel (OSC) notice advising you that the Special Counsel will not seek corrective action, or within **60 days** after the date you received the OSC notice, whichever is later. See 5 C.F.R § 1209.5.

**USERRA Appeals.** If you are filing a USERRA appeal, there is no time limit for filing. See 5 C.F.R. § 1208.12. If you file a USERRA complaint with the Department of Labor (DOL) first, you must exhaust the procedures of DOL before you may file an appeal with the Board.

**VEOA Appeals.** If you are filing a VEOA appeal, you must file it within **15 days** after the date you received notice that the Department of Labor (DOL) was unable to resolve the matter. See 5 C.F.R. § 1208.22. Note: Before filing with the Board, you must file a VEOA complaint with the DOL, which is allowed at least **60 days** to try to resolve the matter.

**Formal EEO Complaints.** If you have previously filed a formal Equal Employment Opportunity (EEO) complaint regarding the same matter, you must file your Board appeal within 30 days after receiving the agency's resolution or final decision as to that complaint, or you may file at any time after 120 days have elapsed from the filing of the complaint in the absence of such an agency resolution or decision. See 5 C.F.R. § 1201.154(b).

# APPENDIX B

## MSPB Regional and Field Offices

**Atlanta Regional Office:** 401 West Peachtree Street, N.W., 10th floor, Atlanta, GA 30308-3519
Tel No.: (404) 730-2751; Fax No.: (404) 730-2767
*Geographic Area:* Alabama; Florida; Georgia; Mississippi; South Carolina; and Tennessee.

**Central Regional Office:** 230 South Dearborn Street, 31st floor, Chicago, IL 60604-1669
Tel No.: (312) 353-2923; Fax No.: (312) 886-4231
*Geographic Area:* Illinois; Indiana; Iowa; Kansas City, Kansas; Kentucky; Michigan; Minnesota; Missouri; Ohio; and Wisconsin.

**Dallas Regional Office:** 1100 Commerce Street, Room 620, Dallas, TX 75242-9979
Tel. No.: (214) 767-0555; Fax No.: (214) 767-0102
*Geographic Area:* Arkansas; Louisiana; Oklahoma; and Texas.

**Denver Field Office:** 165 South Union Blvd., Suite 318, Lakewood, CO 80228-2211
Tel. No.: (303) 969-5101; Fax No.: (303) 969-5109
*Geographic Area:* Arizona; Colorado; Kansas (except Kansas City); Montana; Nebraska; New Mexico; North Dakota; South Dakota; Utah; and Wyoming.

**New York Field Office:** 26 Federal Plaza, Room 3137-A, New York, NY 10278-0022
Tel. No.: (212) 264-9372; Fax No.: (212) 264-1417
*Geographic Area:* New Jersey counties of Bergen, Essex, Hudson, and Union; New York; Puerto Rico; and Virgin Islands.

**Northeastern Regional Office:** 1601 Market Street, Suite 1700, Philadelphia, PA 19103
Tel. No.: (215) 597-9960; Fax No.: (215) 597-3456
*Geographic Area:* Connecticut; Delaware; Maine; Maryland (except the counties of Montgomery and Prince George's) Massachusetts; New Hampshire; New Jersey (except the counties of Bergen, Essex, Hudson, and Union); Pennsylvania; Rhode Island; Vermont; and West Virginia.

**Washington Regional Office:** 1901 S. Bell Street, Suite 950, Arlington, VA 22202
Tel. No.: (703) 756-6250; Fax No.: (703) 756-7112
*Geographic Area:* Maryland counties of Montgomery and Prince George's; North Carolina; Virginia; Washington, DC; and all overseas areas not otherwise covered.

**Western Regional Office:** 201 Mission Street, Suite 2310, San Francisco, CA 94105-1831
Tel. No.: (415) 904-6772; Fax No.: (415) 904-0580
*Geographic Area:* Alaska; California; Hawaii; Idaho; Nevada; Oregon; Washington; and Pacific overseas.

#25

1. Improper for Agency by and through agent Mr. Lineberger to unduly influence or coerce Mr. Mroz to retire.
2. Improper for Mr. Lineberger to retaliate by calling Mr. Mroz into meetings about an incident after Mr. Mroz had obtained counsel and to continue to assert pressure on Mr. Mroz to retire.
3. Improper for the Agency to violate SCR 3.130(4.2) bypassing Mr. Musselwhite, who has clearly entered his appearance as counsel for Mr. Mroz and having direct communications with Mr. Mroz, concerning the subject of this action, knowing he was represented by counsel, and ultimately demanding that he sign the "Last Chance Agreement" without the benefit of counsel and within an unreasonable deadline and/or with unreasonable conditions all of which constitutes undue influence and coercion.
4. Improper for Mr. Lineberger to mischaracterize an offense as "Conduct Unbecoming of a Federal Employee" when the proof and evidence in the investigation would indicate that the touching was accidental and did not involve immoral, indecent, or disgraceful conduct, but was at worst discourteous.
5. The Agency misapplied the Douglas Factors both in regard to its Findings and Narrative and in regard to the range and applied action of the appropriate penalty in this case.
6. Improper for Mr. Lineberger to act in reprisal against Mr. Mroz who refused first Mr. Lineberger's demand that he retire. Mr. Lineberger's acts of reprisal included but are not limited to: Suspending Mr. Mroz COR duties, mischarging the offense and mischaracterizing the facts and nature of the offense, recommending the maximum penalty for the offense which was mischarged and continuous coercion, undue influence and hostile work environment to the point that Mr. Mroz was forced to retire.

### 16. Brief Description of Agency Action Prohibited Personnel Action ect.

The undersigned hereinafter, Mr. Mroz, seeks to appeal the decision and actions of the Agency with regard to his forced/involuntary retirement which is the subject of the attached "Last Chance Agreement in Lieu of Removal Action" hereinafter "Last Chance Agreement." See: Exhibit A. Mr. Mroz was forced and coerced to sign the Last Chance Agreement on December 9, 2015.

The following Background and Statement of Facts relevant to the appeal of the forced/involuntary retirement of the undersigned follows:

On or about August 27, 2015 Mr. Mroz was issued a proposed removal letter based on charges of conduct unbecoming of a Federal Employee. See: Exhibit B. Thereafter, Mr. Mroz employed a civilian attorney, Hon. Paul Musselwhite, who undertook representation of Mr. Mroz with respect to the proposed adverse action. Mr. Musselwhite sent a letter to Mark Akin dated September 8, 2015 a copy of which is attached requesting an extension of time in which to investigate and file a meaningful response to the proposed adverse action. See: Exhibit C.

The notification date of the proposed adverse action was August 28, 2015. A five page response and letter dated September 17, 2015 prepared by Mr. Musselwhite was sent to Mr. Mark Akin at 89010 Tank Destroyer, 407th Army Field Support Brigade, Ft. Hood, Texas. See: Exhibit D & E. The Response filed by Mr. Musselwhite asserted that the proposed adverse action was inappropriate and that the proposed penalty was clearly excessive and disproportionate to the charges.

Mr. Lineberger, Mr. Mroz's supervisor, had issued a memorandum dated August 27, 2015 subject to his notification of proposed removal which cited two reasons for the proposed removal. See: Exhibit B. Reason #1 was the allegation of conduct unbecoming of a Federal Employee alleging that on April 30, 2015 Mr. Mroz had inappropriately touched a contracted employee in a sexual manner. The second reason listed by Mr. Lineberger was a claimed failure on Mr. Mroz's part to maintain credentials for assigned duties.

Mr. Lineberger had been pressuring Mr. Mroz to retire since the alleged incident of April 2015 as evidenced by the attached statement of Ms. Gonzales Morales dated June 12, 2013. Mr. Lineberger coercively suggested to Mr. Mroz that if he retired that "no management action would be taken, as in doing so (retiring) would take care of the management action part of the penalty." Later on the 24th day of August, 2015 Mr. Lineberger again, as witnessed by Ms. Gonzales Morales, indicated "if he (Mr. Mroz) decides to retire the action would not stop until there is a firm identified date for retirement, with paper completed, then all the administrative action would stop...". See the attached statements of Jeanette Gonzales Morales identified as Exhibits D1 and D2.

Mr. Mark Akins executed a "Douglas Factors Penalties Selection" concerning John Mroz on October 5, 2015. See: Exhibit E. These same Twelve Factors were enumerated and addressed in the response filed by Hon. Paul Musselwhite. In his Douglas Factors Report, Mr. Akins indicates as follows:

1

"Item # 1 The nature and seriousness of the offense, and its relation to the employee's duties, positions and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain or was frequently repeated." Mr. Akin's Narrative found this factor "Aggravating," stating in his findings that Ms. Allen was "uncomfortable," and that Mr. Mroz had "pleaded guilty to a Class B misdemeanor, simple assault whereas he knowingly touched Ms. Margaret Allen's left buttocks with his hand." He considered the fact that <u>Mr. Lineberger had decided to remove Mr. Mroz from his COR responsibilities</u> and that one of Mr. Mroz's responsibilities was to oversee the "contractor Ms. Allen was employed against" (emphasis added).

However Mr. Akin fails to take into consideration the offense to which Mr. Mroz plead guilty does not contain an element of sexual misconduct and to characterize the conduct as sexual harassment, immoral, indecent or disgraceful, as alleged by Mr. Lineberger in Exhibit B, is a willful misconstruction of the fact. The undersigned has always maintained that it was his intention to slap Ms. Allen on the back but as she walked away he accidently touched her buttocks area. See the sworn statement of Mr. Mroz made to CID attached as Exhibit F. The fact that Mr. Mroz plead guilty to simple assault and paid a minimal penalty/fine of $100.00 fine, without the benefit of hiring an attorney or having legal advice to make his decision, falls far short of the rating by the agency of "Conduct unbecoming a Federal Employee" listed in the behavioral offenses for which Progressive Discipline is Appropriate. "Simple Assault" involves the element of "unwanted touching" but has no element involving sexual or immoral conduct. It could be characterized on the Behavioral Offense list as "Discourtesy" at best. "Behavioral offenses for which Progressive Discipline is 'Appropriate" indicates that for "Discourtesy" a range of penalties as low as a written reprimand to so much as a "one day suspension" for the first offense. "Conduct Unbecoming," the category as mischarged by Mr. Lineberger, the penalty range is a "one day suspension to removal."

Mr. Mroz's immediate and repeated apologies to Ms. Allen for his accidental touch of her buttocks, does not constitute an admission to conduct unbecoming of a Federal employee and even in the category as charged for this offense would not warrant removal.

Factor 2 "the employees job levels and type of employment" and his findings under Factor 1 that the revocation directly impacted Mr. Mroz's daily duty performance because he can no longer serve COR for the supply portion of the logistic readiness center Knox services contract and support of management of class II, III, IV, V, VII, and IX operations, is based on the decision by Mr. Lineberger to remove Mr. Mroz, from his COR responsibilities in retaliation for his refusal to immediately retire. Mr. Lineberger's arbitrary and capricious decision is not consistent with or required for the comfort or the protection of Ms. Allen. Mr. Lineberger has willfully misrepresented Ms. Allen's response to the incident, and Mr. Lineberger's decision to suspend Mr. Mroz COR responsibilities was done in reprisal for Mr. Mroz initial refusal to submit to Mr. Lineberger's demand, in April 2015 that Mr. Mroz involuntarily retire as soon as possible. Mr. Mroz maintains that after his apology which Ms. Allen appeared to accept, that she expressed no indication that she no longer wanted to have any professional contact with Mr. Mroz or that she would be uncomfortable working with him in the future.

Further as evidenced by Mr. Akins Narrative for Factor 3, The Employees past disciplinary record and Factor 4, The Employees past work record, both found to be Mitigating" by Mr. Akin's, suggest that removal was not an appropriate discipline to pursue in this case. Mr. Akin noted, Mr. Mroz had 47 years of solid DOD service 20 years in the Military, and 27 years in Civil Service with no formal disciplinary actions. Numerous statements by other co-workers indicated Mr. Mroz had a very positive working relationship with all of his subordinates in every area of responsibility that had been assigned to him. See: Exhibit G.

Mr. Akin's Narrative characterizing Factor 5, "The effect of the offense upon the employee's ability to perform…" again is based upon the mischaracterization of the offense and Mr. Lineberger's willful mistreatment of facts and mischaracterization of conduct is reprisal to continue to coerce Mr. Mroz forced/involuntary retirement.

With respect to factor 5 "the effect of the offense upon the employees ability to perform at a satisfactory level and its level upon the supervisors confidence in the employees ability to perform the assigned duties. which Mr. Akin's found to be aggravating. That finding is based upon Mr. Lineberger's decision to revoke Mr. Mroz's COR responsibilities. There has been no evidence provided that Ms. Allen has demanded Mr. Mroz be removed from that position or that she refuses to work in that area with him, it appears to be arbitrary and capricious decision on the part or Mr. Lineberger who has consistently applied undue influence and coercion to Mr. Mroz attempting to effectuate his forced/involuntary retirement from his position.

Factor 6 "The consistency of the penalty with those imposed upon the employees for the same or similar offense in like or similar circumstances "was found 'neutral" by Mr. Akin who indicated he had no similar incidents in the past.

Mr. Akin's recognized with regard to Factor 7 "the consistency of the penalty with the like Table of Offenses and Penalties that Mr. Mroz's charge of simple assault and fine of $100.00 was a "Mitigating" circumstance. Mr. Akin's Finding a violation of conduct unbecoming of a Federal Employee, which typically had a range of penalty for first offense of one day suspension to removal, and the proposed penalty of removal of Mr. Mroz is unsupported by the charge to which Mr. Mroz pled. There is no immoral, indecent, or disgraceful conduct involved in a simple assault, and Mr. Mroz has always maintained that his unwanted touch was accidental. Even so, Mr. Mroz received the extreme minimum range of penalty of a $100.00 fine for this Class B misdemeanor which he pled guilty to without the benefit of counsel, and consistency would demand that a penalty of conduct unbecoming of a federal employee should fall in the minimum penalty range on the administrative side of this action. The extreme minimum on the administration side in this case would be a one day suspension.

Factor 8 "The notoriety of the offense or its impact upon the reputation of the Department of the Army" was found by Mr. Akin to be 'Aggravating." Mr. Akin's finding ignores the fact that Mr. Mroz had an impeccable record and that the civil offense and penalty for the alleged conduct were minimal at best. Further Mr. Mroz has always maintained in his defense this particular offense was accidental in nature.

3

Mr. Akin's Narrative Finding that Mr. Mroz's act "undermined the Army's Anti-Harassment Policy for Workplace' and other Findings are based on Mr. Lineberger's mischaracterization of the offense. Mr. Mroz was not charged with "Sexual Harassment" and the civil charge of "Simple Assault" does not include or imply immoral, indecent, or disgraceful conduct as an element of the offense.

Mr. Akin finding under Factor 9 "The element with which the employer was on Notice of any rules that was violated..." as Aggravating is challenged for the same reason. There are simply no facts to support that Mr. Mroz accidental touching of Mrs. Allen was intended by him or understood by Mrs. Allen to be harassment, sexual or otherwise.

Factor 10, "The potential for the employee's rehabilitation," Mr. Akin's found "Mitigating." Mr. Mroz took responsibility, and in order to appease his chain of command, pled guilty to simple assault and paid a fine. Mr. Mroz maintains that his reason for not obtaining an attorney and for entering a plea of guilty to simple assault without legal advice was that Mr. Lineberger and the agency expected him at a minimum to accept responsibility for the unlawful, "though not intended as sexual" contact with Ms. Allen. Further as indicated in Mr. Akin's Narrative and as always maintained by the undersigned he apologized to Ms. Allen immediately and subsequently. Further, in Mr. Akin's Narrative he recognizes that Mr. Mroz's civilian's record has been completely clear and that Mr. Mroz has fully indicated that he could perform the duties assigned in both his oral and written response. Mr. Akin's appears to take no exception with Mr. Mroz's position that he is able to perform those duties.

Factor 11, "The mitigating circumstances surrounding the offense such as provocation on the part of others" was found by Mr. Akin to be neutral. Although, Mr. Mroz did offer his apologies in the accidental touching, the CID investigation, Mr. Mroz written sworn Statement, and oral testimony has always maintained that Ms. Allen had in the past slapped Mr. Mroz on the back and engaged in conduct that would have indicated that she had a positive working relationship with Mr. Mroz which would explain his attempt to slap her on the back that went awry.

Factor 12 "The adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employer or others" Mr. Akins found "Aggravating," Mr. Akin's cited the Army's zero tolerance for sexual harassment which can lead to hostile working environment, plus Mr. Mroz's March 11 attendance at the LROC Knox mandatory annual sharp training reinforcing that "this type of behavior" in a seasoned supervisor cannot be sanctioned, that preceded the incident by 2 weeks. This finding is totally inconsistent with the facts surrounding what actually occurred between Mr. Mroz and Ms. Allen, and the charges brought. If in fact Mr. Mroz had intentionally groped or intended sexual contact with Ms. Allen then a charge of "Sexual Harassment" would have been placed. It was not. That charge presumably was not considered given the fact that Mr. Mroz and Ms. Allen recognized that Mr. Mroz's contact was not intended to be sexual in nature, indecent, immoral, or disgraceful.

In his "Personal comments" Mr. Akin's recognizes "this being his first offense coupled with his 47 years solid DOD service (20 years military; 27 years civil service) with no past disciplinary actions better suits a 5 day suspension without pay action. Mr. Akins "also took into

4

consideration Mr. Mroz clearly indicated fault – both to the Judge and to his LRC Director." The fault admitted in this case is documented in Mr. Mroz's statement where it indicates no more than "an accidental toughing." This particular comment by Mr. Akin's specifically confirms Mr. Mroz's expressed understanding that it was the expectation of the director and Mr. Lineberger specifically that he should go to court and take responsibility by pleading guilty to the simple assault, an "unwanted touching," and paying the $100.00 fine. It's this very expectation on the part of the agency that encourages their employees to enter pleas and take responsibility, and suggesting that it will help their case, that caused Mr. Mroz to forgo his right of due process and to hire counsel to give him legal advice concerning potential defenses even in cases as minor as simple assault. Mr. Mroz knew he was at fault for accidentally touching Ms. Allen's buttock. That is why he promptly and immediately apologized, and subsequently reiterated his apology. Mr. Mroz understood that Ms. Allen accepted his apology, and thought his apology resolved the incident. The decision to cancel Mr. Mroz COR credentials, as maintained by the undersigned to be Mr. Lineberger's arbitrary and capricious decision, made by Mr. Lineberger in order to impact the decision made by Mr. Akin, and to coerce the undersigned to involuntary resign. Given Mr. Akin's comment he clearly realized Mr. Mroz had been gainfully performing his assigned duties prior to the incident and since the incident in a satisfactory manner. There has never been any proof by the agency that Mr. Mroz ever failed to satisfactory perform COR duties before they were removed by Mr. Lineberger or that the touching was more than an accidental unwanted touching.

Mr. Akin also in his comments indicates that Mr. Mroz's class B misdemeanor of "simple assault" would always be on his record, which is not true. Actually Mr. Mroz having only that offense on his record is presumably entitled to an expungement of his record in time.

Further, Ms. Allen is not an employee of LRC SSA, and the revocation of Mr. Mroz's COR responsibility was initiated by the agency and not by the contractor. The contractor did not request Mr. Mroz's reassignment and had no authority to terminate the duties of a senior civil servant. In any event it appears that the revocation action was taken at the behest of Mr. Lineberger but was not requested by the contractor. Additionally when Mr. Lineberger first discussed the adverse action with Mr. Mroz the loss of COR duties was never discussed and not part of the charges informally proposed. It is clear that when Mr. Lineberger realized the nature of the incident involving Ms. Allen would not support a charge of sexual harassment and that Mr. Mroz's record of employment and the single incident in question would not have supported any type of action to terminate Mr. Mroz's employment, that Mr. Lineberger decided to suspend or revoke Mr. Mroz's COR duties to make the likelihood of approval of removal sanctions more probable. The allegations specified in the removal justifications had failed to acknowledge Mr. Mroz remained fully qualified in every respect to perform all of the other duties required of his position which are numerous and substantial . Comparing the petition for removal which Mr. Musselwhite defended in his response, to the Narrative and Findings of Mr. Akin when considering the "Douglas Factors," it is clear that Mr. Lineberger carefully selected and manufactured facts to support his mischaracterization of Mr. Mroz's conduct in his complaint to support his intended agenda of having Mr. Mroz involuntary retire or otherwise removed from federal service. It is noteworthy that Mr. Lineberger's proposed adverse action letter, alleges multiple incidents of misconduct, based on purely fabricated assertions and no proof. There was never any allegation that there was any other incident other than the incident alleged to have

5

occurred on April 30, 2015, which according to the table of penalties for first offense would begin at a penalty of a one day suspension. The "one day suspension" is the exact penalty that Mr. Lineberger at first suggested Mr. Mroz would receive as a result of this incident.

Even in his response, Mr. Musselwhite goes on to indicate "when the incident first arose, Mr. Lineberger offered to recommend no punishment if Mr. Mroz agreed to an immediate retirement. He repeated this retirement request on a number of occasions making it explicitly clear to Mr. Mroz that he had decided to replace Mr. Mroz with a subordinate to his liking." Given this history, it is clear that Mr. Lineberger's decision of what charges were brought and his characterization of the conduct in question should have been viewed as suspect and reprisaltory in nature. Mr. Lineberger should have been removed as an intermediary or a point of contact regarding any further action taken or contemplated in the case after the filing of Mr. Musselwhite's response and letter dated September 17, 2015. Although Mr. Musselwhite's letters in response to the adverse action addressed to Mr. Mroz suggested that Mr. Mroz would accept a penalty of a one day suspension and would agree to retire on April 1, 2016, and waive his right of appeal, it was clear at that point from the response filed by Mr. Musselwhite, that Mr. Mroz was indicating that his retirement was being forced upon him by Mr. Lineberger and was not voluntary in nature. Thus at that point, the Agency was on Notice that Mr. Lineberger was attempting to effect the involuntary retirement of Mr. Mroz and the characterization of the charges and conduct by Mr. Lineberger might have been reprisal for Mr. Mroz's refusal up to that point to retire.

In short, after counsel for the agency prepared a "Last chance agreement in lieu of removal action" which proposed a five day, not one day suspension, and retirement on April 1, 2016, and contained other terms and conditions including the terms and conditions in item 1D, E, F, G, H, Item 2, 3, 4 and 5 which were not discussed, negotiated, or addressed in any previous correspondence with Mr. Musselwhite, the "Last Chance Agreement" should have been sent to Mr. Musselwhite for review. The fact, that Mr. Lineberger had been accused of unduly influencing the forced/involuntary retirement of Mr. Mroz in the response filed by Mr. Musselwhite clearly indicates that any document addressing the complaint, more specifically addressing Mr. Mroz's retirement, should have been sent by the agency's attorney to Mr. Musselwhite for Mr. Musselwhite to discuss with his client and should clearly not have been sent to Mr. Lineberger for Mr. Lineberger to discuss with Mr. Mroz. Those terms were not terms that were created by Mr. Mroz's attorney, nor were they reviewed by Mr. Mroz's attorney prior to Mr. Mroz being forced to sign the agreement.

Up to this point, Mr. Lineberger on numerous occasions had told Mr. Mroz that if he would retire and provide a date of retirement he would take no further "Army punishment Actions." It was under this pressure that Mr. Mroz suggested to Mr. Musselwhite that he might consider retiring on April 1, 2016, and it's clear in Mr. Musselwhite's response to the complaint that Mr. Mroz was under pressure from Mr. Lineberger to retire.

Instead of getting a call from Mr. Musselwhite to come and discuss the document prepared by the Agencies' counsel, Mr. Mroz was called into Mr. Lineberger's office on December 3, 2015, and given a letter from Mr. Akin dated November 30, 2015, with the "Last Chance Agreement" enclosed. Mr. Lineberger handed Mr. Mroz the letter dated November 30,

6

2015 and the agreement captioned "Last Chance Agreement in Lieu of removal Action" on December 3, 2015 and demanded that Mr. Mroz execute both: (1) the acknowledgement of the letter and (2) the "Last Chance Agreement," at that time. When Mr. Mroz told Mr. Lineberger that he couldn't sign it until he had at least talked to his attorney, then Mr. Lineberger told him that he had 5 working days to sign the letter. See the attached email from Mr. Lineberger dated December 3, 2015 marked at Exhibit I.

On December 9, 2015, Mr. Mroz signed both the Agreement and Acknowledgement of the letter and handed those to Mr. Lineberger per his demand even though he had not seen or talked to his attorney. Mr. Lineberger then, on the same date, came back 10-20 minutes later to Mr. Mroz indicating that Mr. Parrish could not make out his signature and wanted Mr. Mroz to print his name beside his signature, which he did. This forceful and coercive conduct on the part of Mr. Lineberger was wholly and completely inappropriate and violated M. Mroz due process and right to counsel, as well as, Supreme Court Rule 3.130(4.2) which requires that attorneys or their agents not have any direct contact with adverse parties who are represented by attorneys. SCR 3.130(4.2) would require that all communications and correspondence pertaining to the adverse party be addressed through his legal representation. At the time of receiving the "Last Chance Agreement" and being instruct by Mr. Lineberger that he had to sign it within 5 days, Mr. Mroz attempted to contact Mr. Musselwhite so that he would have an opportunity to discuss the "Last Chance Agreement in Lieu of removal" but was unable to see him within the deadline given. Clearly Mr. Mroz was not afforded the opportunity to consult Mr. Musselwhite and obtain advice concerning provisions of the agreement that dealt with his rights to pursue actions, appeals, grievances including grievances against Mr. Lineberger for his coercive conduct, reprisal, and creation of a hostile working environment toward Mr. Mroz. Mr. Mroz's attorney had not seen, read, or discussed the agreement with Mr. Mroz in advance of Mr. Mroz signing, as evidence by the fact that Mr. Mroz signed the agreement on December 9, 2015 and Mr. Musselwhite himself did not receive the agreement or sign it until December 15, 2015, at least 7 days after his client had executed it. In fact, after obtaining Mr. Mroz's signature on the agreement per his demand, Mr. Lineberger then returned the agreement to Mr. Parrish and it was forwarded to Mr. Musselwhite for his signature, after the fact. These facts corroborate Mr. Mroz's claim that he was not afforded a fair opportunity to discuss the terms of the agreement with his attorney; that he was forced and coerced to sign the agreement without the advice of his attorney under duress by Mr. Lineberger, all in violation of his due process rights and agency procedures and rights. Although the Government may take the position that Mr. Mroz has effectively waived his rights including his rights to "pursue any actions, complaints, appeals or grievances in any form, administrative or judicial, related to the employee's previous employment with the agency," by law, Mr. Mroz has the right to file this MSPB Appeal. Further it is in the agencies and public interest that the conduct herein is reported and addressed. Further the adhesion provisions that were promulgated by the attorney for the agency and inserted in the agreement which attempt to force Mr. Mroz to waive rights that he is absolutely entitled to by law, themselves violate provisions of federal law and constitute overreaching on part of the agency.

To suggest that Mr. Mroz's offense in this case merits only $100.00 fine on the civilian side of the penalty but the death penalty for his career and being forced to involuntarily retire on the agency side of the equation is difficult to rectify. In this case, Mr. Mroz's attorney was

7

completely bypassed; Mr. Musselwhite's signature on the agreement was not sought until after Mr. Lineberger forced Mr. Mroz to execute the agreement. Further, after Mr. Mroz hired his present attorney, to represent him with regard to the forced resignation, Mr. Lineberger continued to intimidate and engage in inappropriate coercive communication, and act with reprisal toward Mr. Mroz although he was fully aware that he continued to be represented by counsel. On Feb 12, 2016, Mr. Lineberger called Mr. Mroz into Ms. Gonzales' office and claimed that he had received a call from Mr. Mroz's attorney, which was an untrue statement. Mr. Lineberger said he was not sure of what the attorney was talking about, acting naive attempting to get information from Mr. Mroz concerning his private conversations with his attorney. Mr. Lineberger again threatened Mr. Mroz that he would retire, consistent with his demands in the past. Again on March 16, 2016 Mr. Lineberger called Mr. Mroz into his office and demanded Mr. Mroz signed other legal documents concerning his retirement, completely bypassing his attorney. Thereafter, Mr. Mroz's attorney, the Hon. Wesley Durham, sent a letter dated March 16, 2016 to Mr. Parrish indicating Mr. Lineberger needed to be informed that he was to make any inquiries concerning the matter through Mr. Parrish, the legal representation for the agency, and not to have direct contact whatsoever with Mr. Mroz regarding the case and that his work place harassment and abuse needed to stop. The agency through its agents has violated Mr. Mroz's rights under the merit system protection board. There is nothing voluntary about a retirement that is required per an agreement that is signed under duress and coercion. The very caption of the document "Last Chance Voluntary Retirement," that Mr. Mroz was forced to sign, smacks with confirmation of the tactics engaged in by the agency to force Mr. Mroz to retire in this matter.

MILLER & DURHAM
400 W. Lincoln Trail Blvd.
Radcliff, KY 40160

7009 1680 0002 2049 8431



UNITED STATES POSTAGE
PITNEY BOWES
02 1P  $ 007.82⁰
0000274035  APR 29 2016
MAILED FROM ZIP CODE 40160

MSPB Central Regional Office
230 S. Dearborn St 31st Floor
Chicago, IL 60604-1669